The next case today is Conservation Law Foundation Inc. v. ExxonMobil Corp. et al. Appeal No. 201456 Mr. Coghill, you may proceed. Good morning, and may it please the Court. Ian Coghill on behalf of the Appellant Conservation Law Foundation. I would like to reserve three minutes for rebuttal, if I may? Yes. This case is a citizen suit brought under the provisions of the Clean Water Act and RCRA for the purpose of requiring Exxon to stop its ongoing and illegal discharges of chemicals into the Ireland End River and to address the fact that climate change is increasing severe weather and placing the terminal at risk of catastrophic flooding and a spill. The fundamental issue in this appeal is that the District Court improperly applied the Primary Jurisdiction Doctrine to delay CLF's case by years based off of a permit reissuance that will not decide any aspect of CLF's case. You say years. I'm sorry. Go ahead, Judge Gatzman. You say years. Doesn't the record indicate that the hope is that by October 2021, and I know the word is hope, that the permitting process will be completed? Yes, Your Honor. The goal that EPA stated at the hearing in this case was a goal to finish the entire backlog of permits by October 2021. However, the motion to dismiss in this case was denied in March of 2019. And so we're looking at over two and a half years of delay from when discovery would otherwise have started to even the anticipated goal of EPA issuing just a draft permit in this case, not only considering the time it would take for the notice and comment process and potentially months or years of appeals to both the Environmental Appeals Board and potentially to this court. I'm sorry. So your argument, your merits argument is that you should have the right to demonstrate that they were not exercising good engineering practices because it's not adequately taking into consideration that the climate change issues. Could you help me out and tell me how that issue or what that issue come up in the administrative hearing? And to what extent would we get a better definition of what the EPA considers good engineering practices, if at all? Yes, Your Honor, we wouldn't anticipate the good engineering practices definition or interpretation to come up in the administrative proceeding at all for a couple of reasons. The first is that Exxon has not asked EPA to opine on it. So Exxon's requested a substantively identical permit to the one that it already has. But can you ask them to opine on it? Do you have standing to ask that and to get an answer? So the only way that COF could be involved is if we were involved in the notice and comment process after a draft permit was issued. And as we've stated in our brief, from COF's perspective, the terms of the permit as it is written right now provide the duties that we're alleging Exxon has to consider foreseeable severe weather events. And Judge Wolf, in his opinion, credited those allegations and found that, you know, in reviewing the permit, it would require Exxon Mobil to at least consider the potential effects of foreseeable severe weather on its potential to discharge pollution. So the district court, in its motion to stay order, discussed the potential that good engineering practices might come up in the notice and comment process. As I said, we don't anticipate that to be likely to happen because we feel no need to comment on a permit that comes out if it comes out with the same terms that are already there. In addition... But why? I mean, why would you not feel compelled to comment on it there, even if you did comment on it in the lawsuit? I mean, why wouldn't you feel compelled to seek some kind of answer to what constitutes good engineering practices? Well, Your Honor, for a couple of reasons. The first is EPA has stated previously that it uses terms like good engineering practices to avoid freezing standards in place. So it is to allow and put the onus, frankly, on the permittee to evaluate the risks to its facility and to take affirmative action on that. So EPA has said that it does not want to free standards in place by putting a very specific definition on some of these provisions. And COF agrees with that approach, that there should be a more flexible interpretation of how the permits work to take into account changing conditions at the facility. So we wouldn't feel the need to do so. And in addition, the fundamental issue in this case, again, is the delay to COF's case. So we filed this case over four years ago, alleging both ongoing discharges from the terminal of toxic polycyclic aromatic hydrocarbons into the surrounding water bodies in amounts that are far in excess of what Exxon's permit allows. And those discharges have continued throughout the pendency of this case and the stay that's been placed on it. And so the mounting environmental harm. Could you address sort of the fundamental, one of the fundamental questions in this very interesting case is, is the state water appealable? And you make the one of the arguments that you make is that the state water renders the litigants effectively out of court. You make the alternative argument of a collateral water doctrine. As a factual matter, how can you say that the state water renders you effectively out of court? You have the opportunity to come back to court. Yes, Your Honor. We're not arguing that we don't, we won't ever have any opportunity to come back to court. However, as this court, as the First Circuit found in Rojas Hernandez, it's the possibility of an extended delay in federal court adjudication that triggers the effectively out of court doctrine. And in Rojas Hernandez, the delay that the court was looking at there was a year or so for a state court trial. And then the potential for appeals thereafter. I would argue here we're looking at an even longer stay that has already occurred, as well as potentially another year or so until EPA's stated deadline. And so the extent of the delay of federal of federal court review of COF's claims bring us within the effectively out of court doctrine. Let's say we agree with you that the effect of the delay was to, as a practical matter, render you out of court. Then what's the next step in our analysis? What do you want us to do? We would ask the court to find that the district court's application of the primary jurisdiction doctrine was an error for a couple of reasons. The first, as we argue in our brief, is that Congress has established the process for filing a citizen suit. It has set the diligent prosecution bar and the pre-suit notice requirement as those requirements that a citizen suit must meet. And tacking on primary jurisdiction, as this court noted in Chico and other appeals courts have, have the potential to create an end run around the very intent that Congress had in setting those citizen suits, which was expanded enforcement and timely enforcement of the environmental statutes. So our first request would be for this court to find that the primary jurisdiction doctrine simply does not apply to citizen suits under the Clean Water Act or RCRA. Now, this court in Chico decided not to go that far or decide that question then. But we think that the facts of this case should make the court reconsider whether to place a bright line rule on whether abstention or primary jurisdiction doctrine should apply. Can I interrupt to ask a question I think relevant to this line of argument? If you should prevail in this appeal and the case then goes forward in the district court with discovery, etc., how are you going to get relief prior to the hoped for mid-late fall, early fall next year timeline that's been set? Well, Your Honor, I think that the district court was correct that the COF's case will not be concluded by that date. So we don't anticipate that COF would have relief by that time frame. Then how are you out of court? The reason that we're out of court is the fact that once the stay is lifted, COF's case will have to proceed all through discovery and through dispositive motions no matter what happens with the issuance of the new permit. But if the new permit corrects the engineering issues that you have identified, you'll be OK going forward. If it doesn't, you have the potential for litigation there. Either way, do you not still have this litigation with respect to damage that may have been done previously? Yes, Your Honor. Again, our assertion is not that – in fact, we don't believe that anything that happens in the new permit will eliminate COF's claims in this case. The problem here is the length of delay in even starting discovery and allowing that case to proceed. So no matter what happens with the stay, our case will have been delayed by a year and a half or two years. But if you're saying that a remedy still exists, still potentially exists, and you wouldn't get that remedy in any event between now and next fall, how is it that you're out of court again? This is the part that I'm still missing. I think in that way, our case is no different from the case in Rojas Hernandez either. The court specifically found that even if there was no preclusive effect in the state court – the parallel state court proceeding, that Rojas Hernandez was still out of court because of the delay in adjudication of his federal claims based off of something that was outside of what the federal court itself was doing. So I think we fit directly into that same ruling, and in addition, the amount of delay that has transpired and the ongoing environmental harm throughout that period makes our case moving forward more quickly, even more important than might be the case in just a straight damages case or something along those lines. So I want to ask the other judges if there are follow-up questions at this time, and even if there are not, we've taken a considerable amount of your time and used it all up, so I want to give you another minute to wrap up. But are there other questions first? I just had one. In the district court, did you seek to do discovery – I mean, did you seek a more limited stay, in other words, the right to proceed with discovery if not to dispositive motions? We didn't – Your Honor, we didn't specifically ask to proceed with discovery. However, during the pendency of the motion to stay, the parties submitted a joint plan for discovery in the event that the motion to stay was denied. So that proposal was in front of the court, and the court found that the entire case should be stayed as opposed to allowing the case to proceed. I guess I don't understand why the court wouldn't allow discovery. I agree with you, Your Honor, in the sense of we did raise in the district court that the timeframe at issue here, the early stage of our case, meant that the two proceedings could proceed in parallel and there would be no loss of information for the district court in the first place. So that is one of the biggest problems for us in this case is that we haven't even been allowed to start discovery. Why don't you take a minute and wrap up? Thank you, Your Honor. So in conclusion or in summary, what I would say is we would ask this court to find that it has jurisdiction under either the effectively out-of-court doctrine or the collateral order doctrine and find that the district court erred in staying COF's case based on the length of the delay that has elapsed and will at this moment continue indefinitely, the continuing environmental harm and the fact that the permitting process will not decide any issue. And the one other point that I wanted to always mention is that COF's RCRA and pollutant discharge claims are not even mentioned in the motion to stay order. In fact, the district court ignored the impact of those claims and the permitting proceeding is not even arguably related to those claims, but they still remain stayed along with everything else. Thank you. You've reserved some time and we'll hear from Mr. Marks if you would mute your audio and video. Thank you, Your Honor. Thank you, Chief Judge Howard. William Marks of Paul Weiss for the Appelese and may it please the court. As the court correctly recognized in its show cause order, the court lacks appellate jurisdiction to review the district court's order staying the case under the doctrine of primary jurisdiction. That order is not a final judgment and appellant did not ask the district court to certify the order for interlocutory appeal. Instead, appellant invokes two narrow exceptions to the final judgment rule that it contends permits appeal in this case, but neither exception is applicable here. In the alternative, appellant seeks mandamus relief, but nothing in the district court's order comes anywhere near the sort of palpable error necessary to justify such an extraordinary remedy. To the contrary, the district court properly exercised its discretion by staying the case in order to allow EPA to act on the terminal's permit renewal application. Appellant is asking the district court to order physical modifications to the terminal's stormwater treatment system based on a novel interpretation of a commonly occurring permit term that the district court concluded was ambiguous. And EPA's action in the permit proceeding could resolve many of those very issues. A stay under the doctrine of primary jurisdiction... Explain how. What could occur in the EPA that would shed some light on what that term means? I think there's two primary ways, Your Honor. First, EPA is well aware of this lawsuit, and as I noted, the term good engineering practices is a common term that the district court has now found ambiguous. So it's certainly possible that EPA could address the issues in this lawsuit when it issues the draft permit, either in the statement of basis or the fact sheet. But as Your Honor also noted, both parties have the opportunity to comment on the permit and raise these particular issues in the lawsuit. And we think that if appellant raises these issues, CLF would be required to respond to them. Now, appellant takes the position that it does not want to file a comment, and it took that same position below. And frankly, Your Honor, we think this position is somewhat astonishing. Appellant is here, and while we disagree with the allegations in the complaint, appellant is here claiming that its members are at risk of substantial injury without physical modifications to the terminal. And yet the district court determined that the permit was ambiguous with respect to whether it imposed that obligation. And appellants are here saying that they don't want to comment on the permit and ask EPA to impose affirmatively and expressly the obligations it seeks here. I think the only way the court can understand that is a recognition that EPA is unlikely to adopt appellant's views and has an attempted in run around the administrative process. Now, I don't think that question really goes to the question of jurisdiction. Here, a stay order – the general rule is that a stay order is not appealable as of right. Mandamus is the only relief. To get around that basic rule, appellant invokes the effectively out-of-court exception to the final judgment rule and the collateral order doctrine. And has some pretty strong support in Rojas Fernandez, or am I wrong? No, Your Honor. We don't think so. In Rojas Fernandez, the court looked at two factors, whether the stay was indefinite in duration and whether the stay was unnecessary. And we don't think either of those are true here. Unlike the cases that appellant cites that have permitted appeal under this broader application of the effectively out-of-court doctrine, the courts have tied the duration of the stay to the completion of the parallel proceedings. In effect, delegating their case management responsibilities to another adjudicator. Now, that's not what the district court did here. The district court listened to discussion from an EPA attorney on the record in the stay hearing and concluded the EPA was likely to either issue the permit or make substantial progress on the permit by October 2021. And so the court set a status date for November 2021 for the parties to brief how the case should proceed. That is not indefinite within the sense that the cases have used the term. Now, on the unnecessary piece, we think there's no problem with that prong because EPA's actions in the permitting proceeding, as we just discussed, could limit or foreclose appellant's claims or could decide some of the important substantive issues in this case. So Rojas Hernandez, in our view, is simply inapplicable. Is there any way that you are able to expedite or shorten the timeline? To my knowledge, no, Your Honor. I think we filed the permit application well before this lawsuit was filed, and it is in EPA's hands now. But we do understand that EPA is aiming for at least to issue the draft permit within fiscal year 2021, which of course it is now. I do want to correct one point, Your Honor. Appellant claimed that EPA's goal to clear the backlog of NPDES permits, and I think this is nationwide, is fiscal year 2021, and as the court likely saw in footnote 5 of its opening brief, it suggested that EPA had somehow materially slowed its progress toward that goal. And with respect to my friend on the other side, I think appellant is just mistaken here. If the court looks at pages 1414 and 1445 to 1446 of the appendix, you'll see that EPA's goal has always been to clear the backlog by fiscal year 2022. So the sources cited in footnote 5 of appellant's briefs don't show that EPA has actually materially slowed its progress. Now I would like to turn to the collateral order doctrine briefly. Before you turn to that, I just have a practical question. Was the executive offices thinking about the EPA? Did it have an impact on EPA staffing, which is contributing to the backlog? Question? No, Your Honor, I'm sorry. If you could perhaps rephrase, hopefully I'll be able to answer it. I'm trying to be diplomatic here. Did President Trump's position on the EPA and his decision not to fully staff certain administrative agencies contribute to this backlog? In other words, if a new administration goes into office, will we, from a practical point of view, see some staff improvement in that agency? Your Honor, I don't think there's anything in the record to suggest that. And I'm not aware of any other documents suggesting that there has been some type of change in the Region 1 staff based on presidential administrations. So unfortunately, I don't have a direct answer to that. Okay. On the collateral order doctrine, I think there's two primary problems with the appellant's argument. The first is three courts of appeals have determined the primary jurisdiction analysis is not completely separate from the merits. And second, I think as a practical matter, there's really no limiting principle on appellant's argument that would not make many state orders appealable as of right. I think its arguments on the collateral order factors effectively would apply to any state order except perhaps for the importance prong. But appellant's argument here on the importance prong is that this is a citizen suit. I don't think that's meaningfully different from saying that any time Congress confers a party with a statutory right of action, there's been a statement by Congress that it's so important, you would automatically satisfy that prong. And so I think under appellant's reading, there should be a whole swath of state orders that are appealable as of right, that right now we would think are only appealable based on mandamus. So we think the only way the court can review this order here is through the path of mandamus. And we don't think that appellant has made anywhere near the strenuous showing necessary to get that kind of extraordinary relief. I think appellant makes three basic arguments or three primary arguments as to why the state order was incorrect. First, that there's a categorical bar on the application of the doctrine of primary jurisdiction in RCRA and Clean Water Act citizen suits. Second, that there's no benefit to the state for the federal proceeding. And third, that the harm from delay required the denial of the state. And I'd like to address each one of those in turn. We think we prevail certainly if the court applies the mandamus standard, but also even if the court is applying de novo review. On the categorical bar issue, with respect to mandamus, this court in Chico Service Station refused to apply a categorical bar on the application of Burford abstention in the context of a RCRA citizen suit. And no other court of appeals has applied the type of categorical bar to the doctrine of primary jurisdiction that appellant seeks here. I think that's alone enough to show that the district court did not commit palpable error on this score. But even on the merits itself, there's no conflict between the doctrine of primary jurisdiction and the notice and diligent prosecution provisions of the Clean Water Act and RCRA. The notice provisions and diligent prosecution provisions exist to protect EPA's and state administrative agencies' enforcement powers. Whereas here, the primary jurisdiction doctrine is really aimed at protecting the EPA's powers more broadly and to give the district court the benefit of agency guidance in a technical case where it would benefit it. There's no inherent contradiction between those doctrines. Counsel, and I know your argument is about mandamus at this point in time, but I want to go back to the effectively out-of-court standard of Rojas Fernandez and the unnecessary or necessary prong of that. How is it that the stay until the new permit is further along is going to have any effect on the meaning of the terms in the current permit? Your Honor, if we are in the world of jurisdiction, I think the first minor point I would make is I think it's really the burden on appellant as the party invoking the court's jurisdiction to show that there won't be any effect. But putting that aside, I think there's a couple ways that the EPA's action could affect this case. As I discussed with Judge Thompson earlier, if EPA states in the statement of basis or fact sheet for the draft permit or answers a comment on the meaning of good engineering practices, that will be powerful extrinsic evidence about the meaning of the term good engineering practices. And recall that the district court concluded that that term was ambiguous with respect to whether it imposed the requirement that appellant seeks, and thus it looked to extrinsic evidence. Other courts of appeals have concluded that in such situations, looking to EPA's interpretation of Clean Water Act permits and NPDES permits in particular is really the most powerful extrinsic evidence available. You prefaced your remarks with the word if. Yes, Your Honor. We don't know whether EPA is going to give a new definition or gloss. Your Honor, that's true that we do not know for certain what EPA will do. But I would submit, as I mentioned in my conversation with Judge Thompson earlier, that really appellant is in the driver's seat here and has the ability to submit a comment and ask EPA to address these issues. And I think that under normal principles of administrative law, EPA would be required to respond to that or else would risk the permit being arbitrary and capricious. But I would also note if the court looks at appellant's comments on the 2009 permit, and that's at 440 to 449 of the appendix, EPA will respond to comments that simply ask for clarification as to the meaning of certain permit terms and don't actually ask for some affirmative change. So even if CLF takes the position it takes today, it could still ask for clarification as to the meaning of the term good engineering practices. And I think the EPA's answer to that comment would still provide powerful extrinsic evidence of the meaning of the permit. Now, Chief Judge Howard, to make one point on your question, I think the other way that the permit could really affect this case in a major way is if EPA were to either say in the permit itself or in the comments that it was expressly rejecting appellant's view of the term good engineering practices. In that case, I think under the Atlantic Salmon provision and its interpretation of the permit shield provision of the Clean Water Act, appellant would not be able to get prospective injunctive relief ordering the requirement it's seeking here because the new permit would expressly or the best interpretation of it would be that it doesn't apply. Now, I know that appellant also has a claim for civil penalties here, but I actually think there would be potentially a mootness and a jurisdictional problem if EPA actually rejected appellant's view. And that's because once the new permit does not contain any requirement like the one that appellant is seeking here, there's really no future violation on that front for civil penalties to determine. So I think the district court realized that there could be a very significant effect on this case depending on what EPA did. And I would also note, Judge Thompson, you asked particularly about why the district court did not permit discovery. And I would point the court to page 18 of appellant's reply brief. And there appellant made the point that the scope of any injunctive relief is going to be heavily driven by what happens in discovery, especially since appellants are seeking some physical modifications to the terminal. We think there will be significant expert discovery in this case that occurs as soon as discovery starts to go forward. But if ultimately EPA action shows that there's no such requirement or that there's a more limited requirement than appellant seeks here, I think much of that discovery would be for naught. And I think that practical consideration is part of what led the district court to conclude that the benefit of a stay outweighed the cost of delay. Thank you. Thank you, Your Honor. And Mr. Cargill, you've reserved three minutes. Yes, thank you, Your Honor. I just wanted to touch on a couple of points that my opposing counsel mentioned. The first is in discussing the citizenship provisions, he made the statement that the citizenship provisions are not meaningfully different from other kinds of rights given by Congress. I would say that that statement is completely at odds with this court's discussion in Chico, as well as the various other circuit court cases that CLF cites, in which the courts found that at a minimum, if primary jurisdiction applies at all to a citizen suit case, it's only in extraordinarily rare circumstances. And that's because Congress already established the notice provision and diligent prosecution bar. So as we've stated in our brief as well, Exxon's argument about the citizen suits being meaningfully different is contrary to law here. Another point that I wanted to respond to was my brother's statements about if EPA does something, EPA might do something, it's possible. That's the exact problem that we have here is even if primary jurisdiction can apply, the potential or the speculation that EPA could do something that might be helpful just cannot be sufficient to stay a citizen suit under those sorts of extraordinarily rare circumstances. EPA could always potentially do something in a future permitting proceeding. And in fact, these industrial facilities are regularly up for one permit or another. I heard counsel to say that you could basically trigger a response through your requests and comments so that EPA would be obligated to act in response to your requests. A couple points in response to that, Your Honor. The first is that in the notice and comment process, EPA is only obligated to respond to comments that might substantively change the permit. So it's, again, EPA could decide to go further than that, but it's not obligated to under the Administrative Procedures Act. The other point is that CLF is enforcing the existing permit that exists right now, and it has the right to exist to enforce that permit, not some speculative new permit. And that brings me to one other point that I wanted to address briefly was any new permit that EPA issues cannot absolve Exxon of liability that might have under this permit. Federal law makes clear under the Clean Water Act that any new permit must be at least as strict as the existing permit. So it is at most a one-way ratchet. It cannot take liability away from Exxon that it has under the existing permit. All right. Thank you both. Thank you. Counsel, hold on. We have one more question. But could the EPA – they can't take away existing liability if there is any, but could they say something that would put a dispositive spin on an issue that's currently before the court? Your Honor, I think that EPA could put a relevant spin potentially in discussion of a new permit. I don't believe that they could place a dispositive spin on it. The good engineering practices standard is there, has written, and so the district court would still need to interpret what good engineering practices, which is really an external professional standard, meant while the existing permit is in process. I don't believe that any statement by EPA could be dispositive on the point of what good engineering practices means in the prior permit. I'm sorry. Chief Judge Howard, just one more, please. What is your response to – your brother counsel's response to my discovery question? Well, Your Honor, I think that I would point out, one, that the district court doesn't say anything about discovery in its motion to stay order. So speculating that that was part of the district court's calculus in doing so I don't think really meshes with how the district court discussed the stay being – the information being potentially helpful to the court. At no point does it talk about the Exxon not having to engage in discovery or anything along those lines. And in addition, I would also state that in one way or another, the discovery is going to have to happen no matter what. And so really we're just kicking the can down the road for whenever the stay is lifted. But there's still going to be discovery. There's still going to be expert discovery. And to the extent that anything EPA does is somewhat informative, then Exxon can cite to that. But that's not a reason to delay a citizen suit by two and a half years and not allow any discovery during that period. Thank you, counsel. Thank you very much. That concludes argument in this case. Attorney Coghill and Attorney Marks, you should disconnect from the hearing at this time.